243 S.W.2d 801 (1951)
LUETHANS
v.
LUETHANS.
No. 28094.
St. Louis Court of Appeals, Missouri.
November 20, 1951.
As Modified on Denial of Rehearing December 21, 1951.
Lawrence J. McKim and Samuel J. Kevrick, St. Louis, for appellant.
Jones & Alexander, St. Louis, for respondent.
WOLFE, Commissioner.
This is an appeal from an order modifying a decree of divorce granted to the defendant, on a cross bill, in 1946. In that decree it was provided that Ruth Luethans should have the custody of Tod Luethans, an infant son, born of the marriage, and that Norvel Luethans, his father, should have a right to visit his son on Wednesdays from 9:00 to 11:00 a. m. and on Sundays.
During the month of July, 1948. the decree was modified in part upon the motion of Ruth Luethans, giving Norvel Luethans temporary custody of the child only on each Sunday from 1:30 to 4:30 *802 p. m. This modification was followed by a petition filed by Norvel Luethans in February, 1949, praying that Ruth Luethans be held in contempt of court for failure to comply with the decree as modified. An order to show cause why she should not be held in contempt was issued, but service could not be had upon her. She finally entered her appearance to the order to show cause, on April 6, 1949. Before the contempt proceedings were considered Norvel Luethans filed a motion to modify the decree as previously modified and asked in the alternative that he be given custody of the child or that he be given temporary custody for two week ends each month and during the months of July and August.
The court after numerous hearings on the motion made the following modification: "And that the plaintiff shall have temporary custody of said child for a period of three weeks each summer hereafter; that the first period of such summer custody shall begin on July 10, 1950, at 12:00 o'clock noon and shall continue until July 31, 1950, at 12:00 o'clock noon and that thereafter said summer custody period shall be for the first three weeks of the month of July of each year; and that during said period in which the plaintiff shall have temporary custody, the defendant shall have the right of visitation with the said child each Sunday during said period from the hours of 1:30 P.M. until 4:00 P.M.; and that the plaintiff shall have further temporary custody of said child during the Christmas week period each year from December 26, at 5:30 P.M. until December 29 at 5:30 P.M.; all until the further order of the Court."
It is from this order of modification that the defendant Ruth Luethans has appealed.
On June 16, 1949, the court undertook to hear both the contempt charge and plaintiff's motion to modify the decree. It appeared from the proceedings had then that Norvel Luethans lived with his parents in Jennings, St. Louis County, in a six-room bungalow owned by them. He was regularly employed and had not defaulted in paying support money provided by the decree. He was a person of good reputation.
It appeared that the reputation of Ruth Luethans was also good. She lived with her parents and her sister in a three-room flat. She had had custody of Tod at all times and had taken good care of his physical needs.
Luethans testified that after the decree had been first modified he attempted each Sunday to take the child out for a ride, but every time he called he was either told that the child was sleeping, or that the weather was too bad, or that the child was sick. Ruth Luethans finally told him that she did not have to let him see the child.
The testimony of Ruth Luethans did not differ greatly from that of Norvel Luethans except that she denied refusing to allow the father to see their son. She admitted that plaintiff had never had an opportunity to take his son for any period of temporary custody and flatly stated that she had not permitted it because she did not consider him a fit person and she was afraid to let him take the child.
The defendant's father testified that he usually answered the door when plaintiff called to see his son and that he invited him in on most occasions. He stated, however, that when the plaintiff called on Christmas day he did not let him in because the visit was not within the hours prescribed by the decree for visitation.
At the conclusion of the hearing the court found the defendant in contempt, but deferred sentence, and the plaintiff's motion to modify was taken under advisement.
A further hearing was had on November 25, 1949, at which time it appeared from the evidence that on four Sundays during the summer Ruth Luethans had suggested that Norvel Luethans could take the child to the park or other places of amusement with her accompanying them. Plaintiff did this on four Sundays. Thereafter, whenever he went to get the child, an argument ensued and she would ask the youngster if he wanted to go with the plaintiff. The child would cry to the point of hysteria and say that he did not want to go, so the plaintiff would not take him. On one occasion *803 Luethans called and Mrs. Luethans told him to come and take the child; then she turned and said, "O. K., Tod, he's coming in after you", at which point the youngster ran into the bathroom and locked the door. When the plaintiff tried to open the door, defendant called the police. Defendant said she understood that all she was required to do under the decree was to have the child ready to go with his father.
After taking this and similar testimony the court sentenced the defendant for contempt. The motion was passed for further hearing to December 15, 1949, and the court further stayed the execution of the sentence for contempt until that date. In the interim the plaintiff called to take his son, who threw another tantrum, and the mother stated: "If you have the heart to do this to him, you will have to take him; I can't do any more." The mother informed the court that the child was sick, and thereafter the following entry appears of record: "The Court: Let the record showyou gentlemen interrupt me if there is anythinglet the record show that in the recess one of the attorneys called Dr. Rupe, a pediatrician, who is taking care of this child, and that the Judge talked to Dr. Rupe at some length afterwards, and that he said the child is in such a condition today that it would probably be better for it to have its mother with it. He also said that the child had evidently some sort of fear complex that has probably been, unconsciously or consciously, built up in the child over a period of time, and that he suggested to the mother before we had called him * * * that Mrs. Luethans bring the child to the Child Guidance Clinic of the Children's Hospital and confer with them, * * *."
The execution of the sentence for contempt was stayed on condition that the child should be taken to the Child Guidance Clinic, and the cause was further heard on April 20, 1950, when the evidence regarding the father's attempt to take the child for the period of temporary custody was about the same as that introduced at the other hearings, and the matter was again deferred to May 4.
On May 4, a further hearing was had and a deputy sheriff testified that in compliance with a writ of assistance issued by the court he had gone with the father to get the child. When he reached the home he found the child crying and carrying on to such an extent that he was afraid to take it and so advised the father. The mother testified that she had told the youngster that the sheriff was coming for him and that the child knew that the sheriff was a sort of policeman.
At the conclusion of this the last hearing, the court made the modification as above set out and again deferred execution of its sentence for contempt to September 15, 1950. Ruth Luethans then appealed from the order modifying the decree.
The first contention raised by the appellant is that there was no showing of a change of condition from the time of the original modification to the time of the modification complained of here, and that because of this the court could not modify the decree. Where a change in the custody of a minor child is sought by a motion to modify a decree of divorce, it is in the nature of an independent action and the motion is treated as a petition in an original action. Olson v. Olson, Mo.App., 184 S.W.2d 768; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061. For this reason we have the rule that there must be a showing of a change of condition, for the rights of the parties have been adjudicated by the original decree. Without a showing of change the court would be barred by its previous judgment from making the alteration sought. It is clearly shown by the evidence that the mother sought to and did instill in the child's mind a fear and disrespect for his father. She has flagrantly violated the decree of the court, and, although the child is now six years of age, he has never been allowed to be alone with his father at any time. Such conduct constitutes a sufficient change of condition to support an order modifying a decree. Shepard v. Shepard, Mo.App., 194 S.W.2d 319; Williams v. Williams, Mo. App., 211 S.W.2d 740; Olson v. Olson, Mo.App., 184 S.W.2d 768.
*804 It is next contended that the welfare of the child should be the guiding factor in making any modification, and that the court erred in allowing the father to see his son because it upset the child. It is so evident that a son should have the companionship, affection, and guidance of his father that it scarcely needs restating. The fact that the child appears to be afraid of his father is most natural under the circumstances. Each time Luethans called to take his son there was present in the house not only Mrs. Luethans' family but another person who came there every Sunday so that he might witness the procedure and testify in the protracted hearings that took place. It was to be expected that the youngster would put on the anticipated performance for such an interested and attentive audience.
The evidence clearly shows that the child is and has been since its birth the victim of a possessive neurotic mother. Tod has had no serious illness except the nervousness and fear from which he suffers by reason of his mother's conduct, and yet he is constantly subjected to medical attention. The mother said that she had had so many doctors for Tod that she could not count them. In addition to this, he has been brought up in an atmosphere of contempt for the courts and a willful disregard of the constituted authorities. We do not know why the court did not take Tod from her and place him in the custody of his father, for the record certainly would have warranted such action. Nor do we know the full conversation that the trial judge had with the doctor, nor what weight he gave to the conversation in reaching his conclusions. While the conversation was engaged in with the full consent of counsel and in their presence, we have disregarded all statements in the record in relation thereto.
The father of the child has not appealed from the modification of the decree made by the court, and the only matter before us are the points raised by Mrs. Luethans, the appellant. These are wholly without merit, and the judgment of the circuit court should be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., and ANDERSON, J., concur.
RUDDY, J., not sitting because not a member of the court at the time of argument and submission.